[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15644
Non-Argument Calendar

_____

D. C. Docket No. 08-20228-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ULISES CAO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 16, 2009)

Before TJOFLAT, BIRCH and HULL, Circuit Judges.

PER CURIAM:

A jury found Ulises Cao guilty on all counts of a seven-count superceding

indictment charging him as follows: Count 1, conspiracy to possess with intent to distribute five kilograms of cocaine, in violation of 21 U.S.C. § 846; Count 2, attempting to possess with intent to distribute five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1); Count 3, conspiring (with the Count 1 co-conspirators) to obstruct commerce by means of robbery, in violation of 18 U.S.C. § 1951(a); Count 4, attempting to obstruct commerce by means of robbery, in violation of 18 U.S.C. § 1951(a); Count 5, conspiring (with the Count 1 co-conspirators) to use and carry a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(o); Count 6, carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); Count 7, bond jumping, in violation of 18 U.S.C. § 3146(a)(1) and (b)(1)(A)(I). The district court adjudged Cao guilty pursuant to the jury's verdicts and sentenced him to concurrent prison terms of 235 months on Counts 1-5, and consecutive terms of 60 months on Counts 6 and 7, for a total term of imprisonment of 355 months. Cao now appeals his convictions and sentences. We consider first the appeal of his convictions.

I.

A.

Cao argues that the district court abused its discretion in permitting his

alleged prior involvement with a stolen car ring to become a central aspect of the Government's case by allowing too much testimony about that criminal activity into evidence as "inextricably intertwined." All the evidence showed was that he had a propensity to engage in illegal activity, that he was a person of bad character; and thus it destroyed any chance that he had of receiving a fair trial. Assuming, however, that the evidence was relevant to an issue aside from his character, the court failed to engage in the balancing required by Rules 403 and 404(b) before ruling on its admissibility and therefore abused its discretion in admitting it.

We review the district court's admission of evidence over a defendant's objection pursuant to Rule 403 for abuse of discretion. United States v. Bradberry, 466 F.3d 1249, 1253 (11th Cir. 2006). Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." "In evaluating a district court's Rule 403 ruling, we view the evidence in the light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." Bradberry, 466 F.3d at 1253. "The court's discretion to exclude evidence under Rule 403 is narrowly circumscribed . . . Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence." United States v. Church, 955

F.2d 688, 700 (11th Cir. 1992) (internal quotations omitted).

Generally, Rule 404(b) prohibits evidence of offenses or illegal acts extrinsic to the crime alleged in the indictment to show the defendant's bad character. United States v. Costa, 691 F.2d 1358, 1361 (11th Cir. 1982). "Evidence not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if . . . it forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." Church, 955 F.2d at 700 (internal quotation omitted). "In such a situation, because the evidence is intrinsic, not extrinsic, we do not engage in a Rule 404(b) analysis." Id.; United States v. Richardson, 764 F.2d 1514, 1521 (11th Cir. 1985) ("[t]hese prior wrongs were not extrinsic to the charged crimes because the evidence concerning prior crimes was inextricably intertwined with the evidence of the charged crime").

After reviewing the relevant part of the trial transcript, we conclude that the district court did not abuse its discretion in allowing evidence of Cao's prior involvement in a stolen car ring. The evidence was inextricably intertwined with the charges pending against Cao; it was necessary to complete the story of the conspiracy and other offenses charged in the indictment. Furthermore, the court limited the use to which the jury could put the challenged evidence by instructing

4

the jury to consider Cao's involvement with the stolen car ring only to "establish the existence of a relationship" between Cao and the other members of the conspiracy and not for any other use.

B.

Cao argues that the district court committed plain error in failing to recognize the sentencing manipulation by the Government, which infringed his right to a fair trial and, after he was convicted, improperly enhanced his sentence. Specifically, there was no need for the ATF agents through the confidential informant to say that the drug courier would be armed and that the co-conspirators should be armed as well. Cao argues that there was no evidence that any of the co-conspirators would have been armed had the confidential informant not told them that the drug courier would be armed. In short, the Government overreached, manipulating the facts of the reverse sting to introduce a firearm into the situation and thereby increasing his chances of conviction and an enhanced overall sentence.

To prove plain error, a defendant must show: (1) error, (2) that is plain, and (3) that affects substantial rights. United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). If all three conditions are met, we may exercise our discretion to recognize the error, if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (citation and quotation omitted). An error

5

affects a party's substantial rights, if it had a substantial influence on the outcome of the case.  Id.

We recognize "outrageous government conduct" and "sentencing manipulation" as viable defenses.  United States v. Ciszkowski, 492 F.3d 1264, 1270 (11th Cir. 2007).  Outrageous government conduct occurs when law enforcement obtains a conviction for conduct beyond the defendant's predisposition by employing methods that fail to comport with due process guarantees.  Id.  Under this standard, the conduct must be so outrageous that it is fundamentally unfair.  Id.  Similarly, sentencing factor manipulation occurs when the government's manipulation of a sting operation, even if insufficient to support a due process claim, requires that the manipulation be filtered out of the sentencing calculus.  Id.  Outrageous government conduct would necessitate the reversal of a defendant's conviction, while sentencing factor manipulation would simply reduce the sentence applied to his conduct.  Id.

Government-created reverse sting operations are recognized and useful methods of law enforcement investigation.  United States v. Sanchez, 128 F.3d 1410, 1413 (11th Cir. 1998).  The fact that law enforcement may provide drugs or guns essential to a willing and predisposed offender does not necessarily constitute misconduct.  Id.  The standard for sentencing factor manipulation is high.

6

Ciszkowski, 492 F.3d at 1271.  We have previously declined to find that the government engaged in prohibited sentencing factor manipulation in other similar contexts.  See Ciszkowski, 492 F.3d at 1271 (government supplying defendant with a silenced weapon after defendant was hired to commit a murder was not manipulation); United States v. Bohannon, 476 F.3d 1246, 1252 (11th Cir. 2007) (government's selection of age of "minor" victim for sting operation was not manipulation even though the selected age resulted in guideline enhancement); United States v. Williams, 456 F.3d 1353, 1370-71 (11th Cir. 2006) (government's purchase of crack rather than powder cocaine was not manipulation despite sentencing differential); Sanchez, 138 F.3d at 1412-13 (government informant's selection of a fictitious amount of drugs to be stolen by defendants was not manipulation of the quantity).  Therefore, to bring sting operations within the ambit of sentencing factor manipulation, the government must engage in extraordinary misconduct.  Ciszkowski, 492 F.3d at 1271.

Cao has not shown that the Government's conduct rose to the level of extraordinary misconduct that denied him a fair trial.  While Cao asserts that none of the co-conspirators would have been armed if the confidential informant had not told them that the courier would be armed, the Government's addition of that fact did not rise to the level of extraordinary misconduct under our caselaw.

Accordingly, the district court did not plainly err in failing to recognize and remedy the alleged sentence manipulation. We consider now Cao's appeal of his sentences.

## II.

Cao challenges his sentences on two theories. First, he contends that, in calculating his offense level for Counts 1 and 2, the court improperly rejected the jury's finding that the cocaine involved in the offenses amounted to 500 grams or more but not more than five kilograms, and substituted its own finding that the offenses involved over 25 kilograms. Relying on concurring opinions by Justice Scalia in Rita v. United States, 127 S.Ct. 2456 (2007), and Gall v. United States, 522 U.S. ____, 128 S.Ct. 586 (2008), Cao argues that the district court had to limit its drug-quantity finding to the amount found by the jury.

We review for clear error the court's determination of the amount of drugs attributable to a defendant in calculating his base offense level. United States v. Simpson, 228 F.3d 1294, 1298 (11th Cir. 2000). "So long as the district court applies the Guidelines as advisory, nothing in Booker[1] prevents the court from making additional factual findings, under a preponderance-of-the-evidence standard, that go beyond the facts found by the jury." United States v. Pope, 461

---

[1] United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

F.3d 1331 (11th Cir. 2006). "When a defendant objects to a factual finding that is used in calculating his guideline sentence, such as drug amount, the government bears the burden of establishing the disputed fact by a preponderance of the evidence." United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005). While the preponderance standard is a relaxed evidentiary standard, "it does not grant the court a license to sentence a defendant in the absence of sufficient evidence when that defendant has properly objected to a factual conclusion." Id. Where the district court's determination of drug quantity is based on testimony of witnesses who appear before the court, great deference is given to the court's assessment of the credibility of the witnesses and evidentiary content of the testimony. Unites States v. Lee, 68 F.3d 1267, 1276 (11th Cir. 1995).

The record before us fully supports the district court's finding, in calculating Cao's offense level, the conspiracy involved at least 25 kilograms of cocaine. Cao's argument to the contrary therefore fails.

Cao's second theory for challenging his sentences is that they are unreasonable because they are a product of (1) the Government's sentencing factor manipulation, and (2) the district court's decision to add an additional upward variance, which punished Cao twice for the bond jumping charge.[2]

---

[2] Cao also complains of the court's rejection of the jury's special verdict regarding drug quantity. That complaint lacks merit for the reasons stated in the preceding text.

9

We review the substantive reasonableness of a sentence under an abuse of discretion standard. Gall, 552 U.S. at _____,128 S.Ct. at 597. We:

> must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.

Id. To that end, the district court "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Rita, 551 U.S. at 356, 127 S.Ct. at 2468 (discussing 18 U.S.C. § 3553(c) and how circumstances decide the brevity or length of what should be said or written). When the district court decides after "serious consideration" that a variance is in order, it should explain why that variance "is appropriate in a particular case with sufficient justifications." Gall, 522 U.S. at _____,128 S.Ct. at 594. The justifications must be "compelling" enough "to support the degree of the variance" and complete enough to allow meaningful review. Id., 522 U.S. at _____, 128 S.Ct. at 597.

If the district court's decision is procedurally reasonable, we then review the sentence's substantive reasonableness under the totality of the circumstances, including "the extent of any variance from the Guidelines range." Id. Sentences

10

outside the Guidelines are not presumed to be unreasonable, but we may take the extent of any variance into our calculation of whether the sentence is substantively reasonable.  Id..  The district court must evaluate  all of the § 3553(a) factors when arriving at a sentence, id. at 596, but is permitted to attach "great weight" to one factor over others.  Id. at 600.

"There is a range of reasonable sentences from which the district court may choose...[and,] the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)."  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).  In Rita, the Supreme Court decided that "where the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so;" however, the Court also said that "sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation."  Rita, 551 U.S. at 356, 127 S.Ct. at 2468.

We may vacate a sentence because of the variance only "if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (internal quotation marks

11

omitted).  However, that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal."  Gall, 128 S.Ct. at 597.

Cao has not shown that his combined sentences are unreasonable.  The district court correctly calculated the Guidelines sentence range (on the Counts 1 and 2, the counts principally at issue), treated the range as advisory, listened to Cao's argument for a minimum sentence, and listed the § 3553(a) factors it was relying upon in imposing its sentences.   Further, Cao's combined sentences of 355 months are below both the 40-year statutory maximum for Count 1 and the life maximum for Count 6.

Cao's convictions and sentences are

AFFIRMED.